SCHOTT, Judge.
We granted certiorari in order to examine a judgment of the trial court ovrruling an exception of prescription filed by relator Scaffolding Rental and Erection Services, Inc. to a tort suit filed by respondent Randall S. Dewitt.
The accident sued on occurred on October 12, 1978. On October 12, 1979, respondent filed a combination workers’ compensation suit against his employers, The Waldinger Corporation and Ebasco Services Incorporated, and their insurer, and a tort suit against XYZ Corporation (a fictitious name) and its insurer ABC Insurance Company (also a fictitious name). On the last page of the petition an indication was given to the clerk of court to withhold service on all defendants. In August, 1980, relator, Scaffolding, was served with a copy of a petition identical to the one filed by respondent except that “Scaffolding, Inc.” was substituted for “XYZ Corporation” everywhere it was mentioned in the five-page petition, i.e., on pages 2, 4 and 5.
Relator’s exception of prescription was based on the allegation that it was not sued in the original petition filed on the last day before prescription ran. It based this allegation on the fact that the microfilm record of the petition is a copy of the original as filed against XYZ and not Scaffolding.
At trial relator established that the usual procedure each morning in the clerk’s office was to microfilm all documents filed the previous day. Thus, the clear inference arose that the Scaffolding pages were substituted in the original petition after prescription ran.
Relator also produced the testimony of Mr. Paul B. Deal, the attorney representing respondent’s employer in the workers’ compensation aspect of the ease. He testified that he first became involved when the suit papers filed in federal court, identical to those involved here, were sent him by his clients. These also named XYZ for Scaffolding. In February, 1980, he began dealing with respondent’s then attorney, Mr. Dennis P. Couvillion, who gave him a copy of the state court suit against XYZ; and Deal had discussions with Couvillion over the prescription problem created when the defendant in the tort suit was sued in a fictitious name. Not until August did Cou-villion tell him there was no problem because the suit had been “amended.” In the meantime the federal court suit had been dismissed with the understanding that respondent would go forward with the state court suit.
Mr. Robert H. Balknap was the attorney who filed respondent’s suits in federal and state courts. He testified that he filed the suit in state court at Hahnville the morning of October 12 with XYZ Corporation as the named defendant and filed the same suit in federal court at about 2:30 PM. Because of some technical defect in the title of the federal court suit he returned to his office to correct the complaint and then realized he had made the mistake of naming XYZ instead of Scaffolding in the state suit. He *1166 made corrected pages for the state suit and returned to Hahnville in time to speak to someone in the clerk’s office who agreed to substitute the changed pages.
In overruling relator’s exception of prescription the trial judge gave the following reasons:
“Basically, if the petition as it is in microfilm controls, then the petitioner in the rule wins; if the petition as it is in the original file controls, then the respondent in rule wins.
The story goes that someone sneaked into the Clerk’s Office and substituted the necessary pages. The supposition is that the suit was filed incorrectly and when the mistake noticed, someone went into the Clerk’s Office, removed the file, removed the fastner, and replaced the sheet in the applicable position. Testimony from the attorney indicates he filed the petition and came back later when some clerk allowed him to place another page in lieu of the one filed inasmuch that the petition had not been answered and leave of court was not necessary. The clerk who did this, if done, could not be produced. Actually, the hearing takes on the flavor of an indictment against the attorney, but it should be noted that there are no positive facts to overcome circumstantial evidence, and applying the latter as to the circumstantial evidence rule, assuming every fact to be proven it must rule out every other reasonable hypothesis, or if this is not correct, it must preponderate in that favor this the evidence fails to do. Thus we reach a blank wall. Having reached that position, what must be done? It is to be noted that in the administration of civil justice, substantial justice is being sought. If this is a combination workman’s compensation and/or tort and if the purview of the law is to do justice between the parties, then in the civilian tradition, presumptive periods should be liberally interpreted. If there are two possible approaches with both being plausible, it seems unfair to penalize the injured party.
While this Court does not feel that the proper way to handle a suit was what was done herein, I just do not feel that ruling in favor of prescription would do substantial justice between the parties, inasmuch as a Federal action had been filed, the proof does not preponderate indicating lawyer irresponsibility, the proof does not preponderate in favor of a mistake on the part of the Clerk’s Office, —In fact, we are left with the fact that the microfilm says one thing, and the original record indicates another.”
The trial judge correctly pointed out that real issue in this case is whether respondent’s claim had prescribed and not whether his original attorney had improperly substituted the pages after the claim prescribed. The importance of this distinction is in the assignment of the burden of proof in the case. Since that burden is squarely on the one who pleads prescription the trial judge’s decision that the evidence did not preponderate either way resulted in a draw, and the exceptor rightfully lost. Thus, the question became whether the trial judge was clearly wrong in his factual conclusion.
The parties have devoted much of their attention to the question of whether the original record naming Scaffolding or the microfilm copy naming XYZ should prevail. We do not subscribe to this simplistic approach but, instead, see the case turning on the fact question of whether the pages were substituted on October 12 or a later date.
The clear inference that the petition could not have been altered on October 12 because the microfilm copy taken the next day did not show the alterations, depends for its validity on the assumption that this transaction or incident was handled in the usual, routine manner. There was no testimony from any of the personnel of the clerk’s office that anyone recalled this incident. Thus, the possibility remained that the substitute pages were left in the clerk’s office on October 12 but were not substituted until after the petition was microfilmed.
Belknap’s testimony was not implausible and it was not contradicted by anyone or clearly demonstrated as untrue. The long period of time elapsing before Couvillion *1167 became aware of the amendment from the time he began negotiating with Deal was explained by Couvillion and Belknap. The former had joined the latter’s law firm in January and took over fifty or sixty active files. Between Couvillion’s being busy with other cases and Belknap’s being busy with political and other matters they simply did not discuss this case and its apparent prescription until July. When they did Belk-nap immediately informed Couvillion that there was no prescription problem because he (Belknap) had changed the petition on time.
For this court to reverse the trial court we would have to substitute our own evaluation of Belknap’s credibility for the trial judge’s. This is not a proper function of an appellate court reviewing the cold record as compared to the trial court’s observation of the witnesses in person. For this reason, we cannot conclude that the trial court erred in accepting Belknap’s testimony as true to the effect that he left the substitute pages with someone on the staff of the clerk of court on October 12 with the understanding that they would be properly filed.
We are not unmindful of C.C.P. Art. 253’s requirement that the clerk shall endorse on all documents filed the fact of filing and the date which was not done in this case. But this was not Belknap’s responsibility. His ended when he delivered the copies to the clerk’s employee with the understanding that she would properly handle the papers. See C.C.P. Art. 255 conferring the clerk’s powers and authority on his deputies.
Accordingly, our writ of certiorari is recalled and we decline to exercise further supervisory jurisdiction over this case at this time.
WEIT RECALLED.
JUDGMENT AFFIRMED.